___

SO ORDERED,

*Katharine M. Samson*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: December 30, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.
___

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  DEBRA ANN FORTENBERRY                                        CASE NO. 14-50768

DEBTOR                                                                                  CHAPTER 13

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on September 18, 2014 on the Objection to Secured Claims and Other Relief, (Dkt. No. 12), filed by debtor Debra Ann Fortenberry ("Fortenberry"); the Response to Debtor's Objection to Secured Claim and Other Relief (the "Objection to Claim"), (Dkt. No. 15), filed by 21st Mortgage Corporation ("21st Mortgage"); the Objection to Confirmation, (Dkt. No. 16), filed by 21st Mortgage; and the Response to Objection to Confirmation, (Dkt. No. 19), filed by Fortenberry. At the hearing, T. Michael Kuykendall appeared on behalf of Fortenberry and Edward Lawler appeared on behalf of 21st Mortgage. Both parties presented expert testimony regarding the value of the manufactured home securing the debt owed to 21st Mortgage.

After considering the expert testimony presented; the appraisals in evidence; and counsels' arguments at the hearing, the Court finds that the value of the manufactured home is $35,000.00. The Court therefore sustains Fortenberry's Objection to Claim to the extent 21st

Mortgage's claim exceeds $35,000.00 and sustains 21st Mortgage's Objection to Confirmation to the extent the plan provides for a value of less than $35,000.00 for the manufactured home in question and proposes to pay zero interest.

## I.    JURISDICTION

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (K), & (O).[1]

## II.    FINDINGS OF FACT

On April 24, 2003, Fortenberry executed an Installment Contract-Security Agreement (the "note") in favor of 21st Mortgage in the amount of $66,226.50 at an interest rate of 13.30%.[2] The note was secured by a new model SH-323 manufactured home. (Dkt. No. 16, Exh. A; Dkt. No. 40, Exh. 1). On May 7, 2014, Fortenberry filed for relief under Chapter 13 of the Code. (No. 11-50015-KMS, Dkt. No. 1). 21st Mortgage filed a claim in the amount of $78,985.72, which includes a principal balance of $61,908.2, interest in the amount of $11,839.95, pre-petition fees, expenses, and charges in the amount of $2,902.64, an overage of $23.51, and attorney's fees in the amount of $2,417.64. (Claim 1-1). 21st Mortgage asserts that the entire amount of its claim is secured. (*Id.*). In her schedules, Fortenberry lists 21st Mortgage as having a secured claim in the amount of $28,486.96. (Dkt. No. 2 at 9). Fortenberry filed her Objection to Claim on May 9, 2014, arguing that the value of the manufactured home is $28,486.96. (Dkt. No. 12).

Fortenberry filed her Chapter 13 plan on May 7, 2014. (Dkt. No 7). She lists the amount owed to 21st Mortgage as $37,719.00 and proposes to pay the value of the manufactured home

---

[1] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[2] (Dkt. No. 16, Exh. A at 2). 21st Mortgage's motion states that the principal amount of the note was $68,676.22; however, the note itself states that the amount financed was $66,226.50. *Compare* (Dkt. No. 16 at 1, ¶ 3) *with* (Dkt. No. 16, Exh. A at 2) *and* (Dkt. No. 4, Exh. 1).

over the life of the plan. (*Id.*). The plan does not provide for the payment of interest. (*Id.*). 21st Mortgage filed its Objection to Confirmation on May 29, 2014. (Dkt. No. 16). It argues that Fortenberry's plan should not be confirmed because it fails to propose payment for the replacement value of the manufactured home and payment of the market interest rate for its secured claim of $78,985.72. (*Id.* at ¶¶ 6, 7).

At the hearing, both Fortenberry and 21st Mortgage presented expert testimony regarding the value of the manufactured home. Fred Buhrer, a certified general appraiser hired by Fortenberry, testified that the value of the manufactured home is $26,000.00. (Dkt. No. 40, Exh. 3 at 3). Russ McSwain, a remarketing manager employed by 21st Mortgage, testified that the "as-is" value of the manufactured home is approximately $35,000.00[3] and the retail value of the manufactured home, after making necessary repairs, would be approximately $56,900.00. (*See also* Dkt. No. 40 at Exh. 4). For the reasons stated below, the Court finds that the value of the manufactured home is $35,000.00.

### III. CONCLUSIONS OF LAW

#### A. Cram Down

Fortenberry seeks to invoke the "cram down" provision contained in § 1325(a)(5)(B) to pay the value of the manufactured home over the life of her plan.[4] 21st Mortgage's claim is subject to inclusion in Fortenberry's Chapter 13 plan, which allows her to modify its rights as a secured creditor. 11 U.S.C. § 1322(b)(2); *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991).

---

[3] In his report, McSwain lists the approximate "as-is" value as $36,000.00. (Dkt. No. 40, Exh. 3 at 3).

[4] Section 1325(a)(5) provides that a plan shall be confirmed if, with respect to secured creditors:
 (B)(i) the plan provides that(I) the holder of such claim retain a lien securing such claim . . . (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the amount of such claim; and (iii) if (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts . . .
11 U.S.C. § 1325(a)(5).

Thus, Fortenberry may "cram down" the original $66,226.50 loan from 21st Mortgage to the present-day value of the collateral securing it and pay that value over the life of her plan.

21st Mortgage does not challenge the classification of the manufactured home as personal property rather than real property. (*See* Dkt. No. 16). And there is no evidence that Fortenberry took the steps necessary to classify the manufactured home as real property under Mississippi law. *See* Miss. Code. Ann. § 27-53-15. 21st Mortgage instead challenges Fortenberry's valuation of the manufactured home. (Dkt. No. 16 at ¶ 6). Where, as here, the debtor has exercised the cram down option under § 1325(a)(5) for personal property, the Supreme Court has held that the applicable valuation standard is the replacement value of the collateral. *Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 956 (1997). And "replacement value" means "the price a willing buyer in the debtor's trade, business or situation would pay a willing seller to obtain property of like age and condition." *Rash,* 520 U.S. at 962 n.2.

**B. Valuation of the Manufactured Home**

Valuation of collateral pursuant to § 1325(a)(5) is governed by § 506(a), which provides that "in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing." 11 U.S.C. § 506(a)(2). Further, "[w]ith respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." *Id.*

The parties do not dispute that the manufactured home securing the loan to 21st Mortgage, which Fortenberry is currently using as her residence, is personal property, acquired for personal, family, or household purposes. Thus, the Court must determine "the price a retail

merchant would charge" for a manufactured home of the same type, age, and condition as Fortenberry's.

The parties presented conflicting expert testimony regarding the value of the manufactured home at the hearing. Property valuation "outside the actual marketplace is inherently inexact" and courts must often assign weight to conflicting valuation testimony in accordance with the credibility and qualifications of the parties' expert witnesses. *In re Grind Coffee & Nosh, LLC,* No. 11-50011-KMS, 2011 WL 1301357, at *6 (S.D. Miss. Apr. 4, 2011) (quoting *Rushton v. Commissioner,* 498 F.2d 88, 95) (5th Cir. 1974)). But a "bankruptcy court is not bound by valuation opinions or reports submitted by appraisers" and may: (1) "form its own opinion as to the value of property in bankruptcy proceedings"; (2) "accept an appraisal in its entirety"; or (3) "choose to give weight only to those portions of an appraisal that assist the Court in its determination." *Id.* (internal citations omitted).

At the hearing, both Fortenberry and 21st Mortgage presented expert testimony regarding the value of the manufactured home securing the loan. 21st Mortgage elicited testimony at the hearing from its employee, Russ McSwain, and McSwain's report was submitted into evidence. (Dkt. No. 40, Exh. 4). His report lists the "as-is" value of the manufactured home as $36,000.00.[5] Fortenberry elicited testimony at the hearing from the appraiser she hired, Fred Buhrer, and Buhrer's appraisal was submitted into evidence. (Dkt. No. 40, Exh. 3). His report lists the value of the manufactured home as $26,000.00. (*Id.*). Neither party objected to the qualification of either McSwain or Buhrer as experts for the purposes of valuing the manufactured home. The Court considers each report in turn.

---

[5] (*Id.*). The Court will use McSwain's "as-is" value rather than his estimated retail value of the manufactured home for the purposes of comparing his report with Buhrer's appraisal since § 506 specifies that "replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property *at the time value is determined.*" 11 U.S.C. § 506(a)(2) (emphasis added).

1. **The McSwain Valuation**

McSwain testified that he has 11 years of experience in the mobile home industry and that he determines the value of used mobile homes on a daily basis by personally viewing the home in question and making deductions from the retail value of the mobile home as necessary. McSwain testified at the hearing that his methodology involves beginning with a retail value and making deductions from that number to determine the "as-is" value of the manufactured home in question. He also testified that he did not rely on the National Automobile Dealers Association (NADA) values at all when valuing the manufactured home in question. McSwain's report does not include the date of his valuation of the manufactured home, but he testified that he valued it in July of 2014. His one-page report lists the "as-is" value of the manufactured home as $36,000.00, which includes a deduction of $5,000.00 for damage to the roof. (Dkt. No. 40, Exh. 4).[6] At the hearing, McSwain testified that the "as-is" value of the manufactured home is approximately $35,000.00, and he testified that it would cost approximately $6,000.00 to repair the roof.

2. **The Buhrer Valuation**

Buhrer testified that he has more than 40 years of experience conducting appraisals. His report indicates that he appraised the manufactured home in question on August 23, 2014. (Dkt. No. 40, Exh. 3 at 3). Buhrer used a market value approach whereby he consulted with a third party who is experienced in the sale of manufactured homes, identified three other comparable sales from September 2013, October 2013, and July 2014, and adjusted the price of those sales to reach his appraisal of the manufactured home in question. (*Id.* at 6). He adjusted each sale price

---

[6] McSwain also opined that the retail value of the nearly 12-year old manufactured home would be $65,900.00—over 90% of the original sales price of $68,291.00. (*Id.*). This estimate includes repairs to the roof and minor repairs to the interior. (*Id.*).

in the following manner: (1) a reduction for the site value since the appraisal in this case is only for the manufactured home, and does not include the real property it sits on; (2) a reduction for the age of the manufactured home, as the comparable sales were for newer homes; (3) a reduction for the condition, since the manufactured home in question requires repairs to the interior; and (4) a $15,000.00 reduction[7] for the roof repair and replacement. (*Id.*).

After making these reductions, Buhrer ended up with comparable sales of $47,530.00, $33,475.00, and $26,230.00. (*Id.*). He then took the lowest comparable sale, rounded down to $26,000.00, as the appraised value of the manufactured home. In his report, Buhrer notes that the "[l]ower range of value is most indicative of value due to subject's condition and repairs needed." (*Id.*). He also noted that the repairs that are needed for the roof "result in a very low market value." (*Id.* at 7).

### 3. The Court's Valuation

After hearing the testimony of both McSwain and Buhrer and reviewing each expert's report, the Court finds that the value of the manufactured home is $35,000.00. The Court reaches this value by accepting McSwain's roof estimate rather than Buhrer's. Accepting this $6,000.00 deduction,[8] rather than the $15,000.00 deduction applied by Buhrer, McSwain and Buhrer's estimates are within $1,000.00 of each other. After hearing the testimony, the Court finds that McSwain's $6,000.00 estimate is more reasonable than Buhrer's $15,000.00 estimate because

---

[7] Buhrer testified that he consulted with an experienced roofer who advised him the roof of the manufactured home would require new decking as well as new shingles, which is why the estimate was much higher than McSwain's for the roof repair. Buhrer also testified that he went onto the roof during his appraisal and that it gave as he walked on it, indicating it was very thin. Essentially, Buhrer testified that he was of the opinion that the roof and decking needed to be fully replaced rather than merely repaired. The $15,000.00 estimate he used was at the upper range of the $10,000.00 to $15,000.00 spectrum given by the roofer and includes new, thicker decking.

[8] The Court does note that McSwain testified at the hearing that he estimated it would cost approximately $6,000.00 for the new decking and shingles required to repair the roof; however, his report indicates that he made a $5,000.00 deduction for the roof repair. For the purposes of its valuation, the Court accepts McSwain's valuation testimony given at the hearing.

Buhrer's is the top end of the range given by the roofer he consulted with and includes replacement of the existing decking with thicker, and therefore more expensive, decking. McSwain, who testified that he has extensive experience in roof repair within the context of reselling manufactured homes, testified that replacing the undamaged decking was unnecessary. Moreover, if the Court utilizes the $6,000.00 estimate McSwain testified to at the hearing rather than the $15,000.00 estimate Buhrer used, McSwain and Buhrer's estimates are within $1,000.00 of each other.

### 4. Pickup Cost

The Court notes that counsel for 21st Mortgage argued at the hearing that the $4,400.00 estimated pickup cost included in McSwain's report should be included in the retail value of the manufactured home for the purposes of § 506(a)(2). Counsel also stated at the hearing that the reason for this inclusion is that the retail value for the purposes of § 506 is the price a merchant is willing to pay for the collateral. This is an incorrect interpretation of § 506(a)(2), which states that "replacement value shall mean the price a retail merchant would *charge* for property of that kind." 11 U.S.C. § 506(a)(2) (emphasis added). Thus, as explained in *Rash,* the replacement value of the manufactured home for the purposes of § 506 means "the price a willing buyer in the *debtor's* trade, business or situation would pay a willing seller to obtain property of like age and condition." *Rash,* 520 U.S. at 959 n.2 (emphasis added). Accordingly, the costs of removing and relocating the manufactured home to 21st Mortgage's lot should not be included in the value of the manufactured home for the purposes of § 506.

The Court is aware, however, that the value of personal property under § 506 may include sales costs,[9] but those sales costs also already appear to be included in McSwain's

---

[9] *See* 11 U.S.C. § 506(a)(2) (stating that replacement value is calculated "without deduction for costs of sale or marketing.").

valuation. Though McSwain does not explain exactly how he arrived at the $36,000.00 "as-is" valuation in his report, he testified at the hearing that he begins with the retail value of the manufactured home and reduces that price to arrive at the "as-is" value. And his report states that the total sales price includes setup costs. (Dkt. No. 40, Exh, 4). Finally, 21st Mortgage only requested that the removal costs—not the setup costs—be added to the valuation at the hearing. Thus, McSwain's "as-is" valuation of $36,000.00 would appear to include all relevant sales costs.

**C. Interest**

Fortenberry's Chapter 13 plan does not currently provide for the payment of any interest to 21st Mortgage. (Dkt. No. 7 at 2). 21st Mortgage asserts in its Objection to Confirmation that Fortenberry's plan should provide for the payment of the "market rate of interest" on its secured claim. (Dkt. No. 16 at 1, ¶ 7). The Court agrees. As a secured creditor, 21st Mortgage is entitled to an interest rate calculated using the formula approach, adopted by the Supreme Court in *Till*. *Till v. SCS Credit Corp.,* 541 U.S. 465, 478–80 (2004). Under this approach, the Court adjusts the national prime rate to compensate for the additional risk of non-repayment posed by debtors. *Till,* 541 U.S. at 479. The enhancement for that risk is typically 1% to 3%. *Wells Fargo Bank, N.A. v. Texas Grand Prairie Hotel Realty, LLC (In re Texas Grand Prairie Hotel Realty, LLC)*, 710 F.3d 324, 332 (5th Cir. 2013). According to the current standing order for the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi, the presumptive "*Till* rate" is 5.0% interest. No. 2014-02 (July 8 2014). This rate is applicable in all cases filed on or after August 1, 2014. *Id.*

Fortenberry filed for relief under Chapter 13 on May 7, 2014, prior to the effective date of the new presumptive rate. Accordingly, the previous presumptive rate of interest is applicable

in this case. That rate, effective in all cases filed after March 1, 2009 and before August 1, 2014, is 7%. *In re McClain,* No. 10-13792-NPO, 2011 WL 8883393, at *3 (Bankr. N.D. Miss. May 18, 2011). Accordingly, Fortenberry's plan should be amended to reflect payment to 21st Mortgage in the amount of $35,000.00 plus 7% interest over the life of the plan.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that the value of the manufactured home securing 21st Mortgage's loan is $35,000.00. It further finds that 21st Mortgage is entitled to the payment of interest at a rate of 7%.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the relief sought in the Objection to Secured claims and Other Relief, (Dkt. No. 12), is **GRANTED IN PART**, to the extent the claim of 21st Mortgage exceeds $35,000.00.

**IT IS FURTHER ORDERED AND ADJUDGED** that 21st Mortgage's Objection to Confirmation, (Dkt. No. 19), is **SUSTAINED IN PART,** to the extent Fortenberry's plan proposes to pay 21st Mortgage less than $35,000.00 and to the extent the plan proposes to pay zero interest to 21st Mortgage**.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Fortenberry shall submit an amended plan consistent with this Court's valuation of the manufactured home that provides for the payment of interest at the 7% rate applicable in this case within 30 days of the entry of this Memorandum Opinion and Order.

## END OF OPINION ##